AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED by _____ D.C.

AUG - 7 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

United States of America )
v. )
LUC MAZARD MICHEL ) Case No. 13-8364-DLB
)
)
)
Defendant(s) )

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 26, 2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 922(e) | delivered or caused to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Daniel V. Dooley, Special Agent, ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: 8-7-13

_____
Judge's signature

City and state: West Palm Beach, FL     U.S. Magistrate Judge Dave Lee Brannon
Printed name and title

A F F I D A V I T

I, DANIEL V. DOOLEY, being duly sworn, depose and state:

(1) That I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATFE) and have been so employed for approximately fourteen years. That prior to being an ATF agent I served as a Detective Investigator for seven years in the Kings County District Attorney's Office in Brooklyn, New York. Prior to that, I served four years active duty in the United States Coast Guard. I have received specialized training regarding the investigation and enforcement of Federal Firearms violations and have conducted investigations regarding individuals involved in illegal firearms trafficking. That I make this statement based on my personal knowledge, court records and interviews with law enforcement officers. Because this affidavit is being prepared for the limited purpose of securing an arrest warrant, it does not contain everything known about this investigation.

(2) On, March 29, 2012, U.S. Customs at the Port of Palm Beach in Riviera Beach, Florida searched a 1985 Toyota Pick up truck that was scheduled to be shipped to Haiti by Teeters Agency and Stevedoring Inc. and Monarch Shipping Lines/Monarch Queen on behalf of Luc Mazard MICHEL "hereinafter" MICHEL.  The search revealed two firearms (a Smith and Wesson model 10-5 .38 caliber revolver and a Jimenez model JA Nine 9mm pistol) and two hundred rounds of ammunition (fifty rounds of American Eagle 9mm

ammunition, Fifty rounds of Fiocchi .38 special ammunition, and one hundred rounds of Independence .40 caliber ammunition). The tailgate of the vehicle and cab had been secured with a heavy chain and locks that had to be breeched by U.S. Customs Inspectors.

(3) According to shipping records, MICHEL delivered the vehicle to Monarch/Queen on March 26, 2012. At that time MICHEL completed and signed paperwork to include an export power of attorney for shipping a 1985 Toyota Pickup truck VIN# JT4RN56D1F0141958. MICHEL also provided a contents list that included; 2 boxes of shoes, 10 buckets of paint, 10 boxes of ceramics, 5 televisions, and 5 tires. No declaration of firearms and or ammunition was provided to Monarch Shipping Lines. MICHEL also provided his Florida State driver's license as identification.

(4) On June 19, 2012, MICHEL arrived at the port and expressed to Ms. Brown, an employee at the port, that he might be in trouble. MICHEL was told to return the following day. On June 20, 2012, at approximately 0915 hours, S/A Dooley and HSI S/A Sullivan interviewed MICHEL inside the public access waiting room at the port. MICHEL voluntarily traveled from his residence in Orlando, Florida to the port to inquire about his vehicle. HSI S/A Sullivan made initial contact with MICHEL and referenced speaking with Ms. Brown. HSI S/A Sullivan stated to MICHEL, "you said you

had a problem." MICHEL instantly began speaking about the two firearms he purchased. MICHEL stated he purchased two firearms from Booties Pawn shop and described the firearms as a thirty eight and a nine. MICHEL described the vehicle he placed the firearms in as a red 1985 Toyota pickup truck. MICHEL recalled he utilized Monarch Queen to ship the vehicle to Haiti. MICHEL stated he did not try to hide the firearms inside the vehicle and forgot to include them on the contents list required by Monarch Queen. MICHEL added he also purchased ammunition that was not included on the list. MICHEL recalled purchasing two or four boxes of ammunition of different calibers to include; 9mm, .38 caliber, and .40 caliber. MICHEL stated the 9mm and .38 caliber ammunition was for the firearms he shipped and the .40 caliber ammunition was for his father's firearm that was already in Haiti. MICHEL conveyed approximately one year ago he purchased a .40 caliber firearm from Booties Pawn shop. MICHEL gave the firearm to his uncle, Jean Claude Michel, who shipped it to Haiti. MICHEL was shown shipping documents by S/A Sullivan that were obtained from Monarch Queen to include the contents list. MICHEL acknowledged the shipping documents were the ones he completed. MICHEL claimed it didn't come up in his memory when asked why the firearms were not on the list. MICHEL again claimed he was not hiding the firearms and explained the chain on the rear door was to keep the items from falling out. MICHEL added the locks on the chain were installed so he could only remove the items once in Haiti.

(5) On November 8, 2012, at approximately 1600 hours, S/A Dooley and HSI S/A Sullivan interviewed Jean Claude Michel at his residence located at 1500 NW 2nd Avenue apartment #1 in Ft. Lauderdale, Florida. During the interview, Jean Claude Michel stated his nephew, Luc MICHEL, did give him a firearm to send to his brother, Augustin Michel, approximately five years ago. Jean Claude MICHEL, a former member of the Haitian military, recalled the firearm was a .38 caliber revolver and not a .40 caliber pistol. Jean Claude MICHEL stated the firearm was stolen out of his residence approximately one week after Luc MICHEL gave it to him. Jean Claude MICHEL denied purchasing or sending any firearms to Haiti.

(6) On January 15, 2013, S/A Dooley and HSI S/A Anderson Sullivan interviewed MICHEL at the McDonald's parking lot located at the intersection of West Colonial Drive and North John Young Parkway in Orlando, Florida. All three participants were standing outside their respective vehicles. During the interview, MICHEL stated he lied to the agents in the prior interview when he informed the agents that his uncle, Jean Claude MICHEL, was in Haiti. MICHEL stated his uncle is a very strict man and did not want to get him involved in the investigation. MICHEL remained steadfast that he gave his uncle a .40 caliber pistol and the .40 caliber ammunition he was shipping to Haiti was for his father who already has a firearm in Haiti from a long time ago. MICHEL also

revealed he purchased an additional .40 caliber pistol for himself at Booties Pawn shop. MICHEL stated this firearm was stolen from his house in Orlando and he did not make a police report because his wife thought a family member stole the firearm. MICHEL was again shown the shipping documents contents list by S/A Dooley. MICHEL stated he did not want to put the firearms and ammunition on the list because U.S. Customs or Haitian Officials would find them. MICHEL acknowledged he also did not want to get caught. On this same day at approximately 1535 hours, MICHEL contacted S/A Sullivan via cellular phone as the agents were returning to Palm Beach County. MICHEL stated he lied about his .40 caliber pistol being stolen. MICHEL stated he shipped the firearm to Haiti and it is now on the family farm. MICHEL added he shipped it in a vehicle via Monarch Queen in the same manner as the other two firearms.

(7) I am aware based on a records search by ATF Industry Operation Investigator Thomas Rossi that MICHEL has not obtained an importers, manufacturers, dealers, or collector license.

(8) Based on my training as a Special Agent for the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, I know it is unlawful for any person knowingly to deliver or cause to be delivered to any common or contract

5

carrier for transportation or shipment in interstate or foreign commerce to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped in violation Title 18 USC Section 922(e).

(9) That in light of the above, I believe that there exists sufficient probable cause to arrest Luc Mazard MICHEL for violation of Title 18, United States Code, Section 922(e).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
DANIEL V. DOOLEY, Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Sworn to and Subscribed to
before me this 7th day of
August, 2013.

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** LUC MAZARD MICHEL

**Case No:** 13-8364-DLB

Count 1:

Delivered and Caused to be Delivered a Firearm to a Common Carrier Without Notice for Shipment in Interstate and Foreign Commerce
Title 18, United States Code, Sections 922(e)

**\*Max. Penalty:** 5 Years' Imprisonment; $250,000.00 Fine
up to 3 years' supervised release

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 13-8364-DLB

UNITED STATES OF AMERICA

vs.

LUC MAZARD MICHEL,

**Defendant.**
_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
BRANDY BRENTARI GALLER
ASSISTANT UNITED STATES ATTORNEY
Brandy.Galler@usdoj.gov
Admin. No. A5501296
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401-6235
Tel: (561) 820-8711
Fax: (561) 820-8777